## SARAH A. LOWE, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, June 13, 1910.

1. **RAILROADS: Negligence: Obstruction in Street: Defects in Pavement: Absence of Warning.** Plaintiff was traveling over a public street crossing which was occupied by defendant's tracks, then in process of repair. Plaintiff knew of such repairs, but did not know of the existence of a hole into which she fell, nor did she know that it was dangerous to use the crossing. On account of the repairs and unevenness of the way, she was proceeding cautiously, but did not see the hole because of insufficient light. Defendant had placed no warning sign at the crossing to appraise pedestrians that the place was dangerous. *Held, a.* Defendant was negligent in permitting the existence of this hole without signal lights to warn travelers of the danger. *b.* It not appearing that this crossing was so glaringly dangerous that a reasonably prudent person would not attempt to use it, plaintiff was not guilty of negligence as a matter of law in so using it, she having the right to assume, in the absence of warning to the contrary, that the way, though rough, was reasonably safe.

2. **PRACTICE: Instructions: Measure of Damages.** Where a person falls on a public street crossing, and is injured, as the result of the negligent condition of a crossing, and while lying in such condition on the street is frightened by the approach of a car coming toward her, such plaintiff is entitled to recover for the nervous shock produced by such fright.

Appeal from Jackson Circuit Court.—*Hon. Hermann Brumback,* Judge.

AFFIRMED.

*John H. Lucas, James R. Page* and *Charles N. Sadler* for appellant.

(1)   The court erred in overruling the demurrer of defendant offered at the close of plaintiff's evidence, and at the close of all the testimony, because plaintiff's own evidence shows she was guilty of contributory negligence.   Woodson v. Kansas City, 123 S. W. 820; Roberts v. Tel. Co., 166 Mo. 371; Cohn v. Kansas City, 108 Mo. 393; Butterfield v. Forster, 11 East 60; Davis v. Railroad, 105 Calif. 131; Yahm v. Ottowa, 60 Ia. 429; Foraker v. Sandy Lake, 130 Pa. St. 123; Moore v. Huntington, 31 W. Va. 842; Clowney v. Kalamazoo, 4 Mun. Corp. Cases, 640; Lien v. Railroad, 79 Mo. App. 475, 479.   (2)   Plaintiff had no right to assume that the street was in a reasonably safe condition for travel thereon, because she knew the condition of said street. Perrette v. Kansas, 162 Mo. 248; Brannock v. Elmore, 114 Mo. 60; Wheat v. City of St. Louis, 179 Mo. 508; Diamond v. Kansas City, 120 Mo. App. 185; Ray v. City of Poplar Bluff, 70 Mo. App. 258; Lien v. Railroad, 79 Mo. App. 479; Schmidt v. Railroad, 191 Mo. 215; Huggart v. Railroad, 134 Mo. 673; Hook v. Railroad, 162 Mo. 580; Barrie v. Transfer Co., 102 Mo. App. 87. (3)   The making of the excavation and fills testified to in this case were not an illegal use of the street, and did not constitute an illegal or negligent obstruction of said street.   Hasselbach v. City of St. Louis, 179 Mo. 505; Pueschell v. Wire & Iron Works Co., 79 Mo. App. 459; Gerdis v. Foundry Co., 124 Mo. 354.

*John I. Williamson* for respondent.

(1)   The court did not err in overruling the demurrer offered by the defendant to the evidence in this case, because there there was no evidence of contributory negligence on the part of respondent.   Heberling

v. Warrensburg, 204 Mo. 616, 617.    (2)    Plaintiff had a right to assume that the street was in a reasonably safe condition for travel thereon and to use it under that assumption.  Deschner v. Railroad, 200 Mo. 333.

JOHNSON, J.—While crossing over street railway tracks maintained by defendant on St. John avenue, a public street in Kansas City, plaintiff fell into an unguarded hole and was injured.  This action is for damages sustained by her and is founded on negligence of defendant which the petition alleges was the proximate cause of the injury.  The answer is a general traverse and a plea of contributory negligence.  Plaintiff prevailed in the trial court where she recovered judgment for one thousand dollars.  Defendant contends that the court should have peremptorily instructed the jury to return a verdict in its favor and our first concern will be the questions arising under this contention.

The injury occurred October 13, 1907, at seven o'clock in the evening at the intersection of St. John and Brighton avenues.  Defendant was operating a double track street railway on St. John avenue, the direction of which was east and west, and was repairing the tracks preparatory to the paving of the street east of Brighton avenue.  Plaintiff, who was sixty-four years old and weighed 175 pounds, lived in another part of the city and was returning from a visit to her married daughter who lived a short distance north of St. John avenue.  She had come on a west-bound car which ran on the north track and not having to cross the car tracks in going to her daughter's home, had not observed particularly the condition of the street, but knew that repairs were being made.  To return, it was necessary for her to take an east-bound car running on the south track.  The regular stopping place of such cars was at the southeast corner of the street intersection.

Accompanied by her daughter, she walked south on the west side of Brighton avenue to the north line of St. John avenue, where she crossed to the east side of Brighton. She and her daughter stopped on the northeast corner of the street intersection until an east-bound car appeared when they separated, the daughter returning home and plaintiff proceeding to cross St. John avenue at the crossing on the east line of Brighton avenue.

The witnesses do not agree about the condition of the tracks but there is evidence to the effect that the space between the rails of the north track and the space between the two tracks had been partly filled in, but that in the space between the rails of the south track, there was no filling and that there was a ditch or hole caused, perhaps, by the absence of a tie. There was an arc light on the north side of the street but plaintiff says it either was not burning at all or was temporarily poor, as such lights are apt to be. She did not know of the pitfalls ahead, but was picking her way carefully and was paying close attention to where she was going. We give the following extracts from her testimony: "I started to cross the track and didn't know it was in the condition it was in; I got across the first one all right and then got down into the other one, and I was going very carefully; I am always careful because I am not very spry. The way I remember the track, it was dug up, loose dirt, and little piles of loose dirt and then little hollows; and that is the way I remember when I got in there. And then when I fell I went into something; I went into a hole I am sure for I was thrown down and thrown hard. Q. When you refer to some loose dirt, was that between the tracks? A. Yes, sir, between the tracks. Q. Was that the north or south track? A. The north track was partly filled up and the other one had none in it. Q. The hole was

between the south tracks? A. Yes sir. Q. You say you fell there; just tell the jury how you came to fall? A. I was just going across there as carefully as I could. I never do try to go fast or run; I never do run for a car. And finally I just stepped just like right down there (indicating), and I think further than that, and just fell. Q. (By the Court): What do you mean, that you stepped into a depression there, or not? A. Yes, sir, some place they had taken a tie out or something; I don't know what it was. Q. (By Mr. Williamson): And then you fell? A. Yes, sir, and then I fell. Q. Then what? A. I stayed there; I could not get up. . . . . Q. Now the entire street on both sides of the track, clear from where you got onto the car, up to where you got off, they had been preparing it for paving, hadn't they? A. Yes, sir. Q. You could see that as you came up in the afternoon? A. I could have seen it if I had looked, but I was on the north side of the car and looking out of the window on that side, and got right out of the car and walked right to the house. Q. But, looking out on the north side you could see that the dirt had been taken out and ballast put in; they were preparing for the paving on the north side, weren't they? A. I didn't see anything. They were preparing to pave both tracks, but I didn't see anything there to call my attention to it. . . . . . A. Don't you remember I said I was going along carefully and all at once I stepped and went down, and I thought I must get out before the car came, and that was the last I knew; I knew I went down there. Q. Why were you going carefully? A. Because the street was rough and I got into a place I knew I had to be careful and I was careful. Q. You knew it was in bad condition, did you? A. Yes, sir, but I didn't know that deep place was there."

Further, it appears that no red lights or other warning signals were set to give pedestrians notice of danger at the crossing. The facts stated are collected from the

evidence most favorable to plaintiff.  The evidence of defendant presents a materially different state of facts, but a recitation of this evidence is not essential to the consideration of the questions in hand.

The petition alleges several acts of negligence, but the only charge of negligence now in the case is "that defendant negligently and carelessly failed to hang signal lights about and over said ditch to warn passersby of the existence of the same and of the danger to be apprehended therefrom, or in any other way to guard or warn passersby against said ditch."

The objections to the instructions given at the request of plaintiff deal in the main with questions raised also by the demurrer to the evidence and, therefore, such objections will be considered in connection with with the demurrer.  The instructions of plaintiff relating to the issue of negligence are as follows:

"2.   The court instructs the jury that if you believe from all the evidence that Brighton avenue and Saint John street, at the times and places in the proof mentioned, were public thoroughfares in Kansas City, Missouri, then plaintiff had the right to assume that the same were then and there in a reasonably safe condition for public travel and to proceed to use the same under that assumption, using ordinary care in so doing, and by the phrase 'ordinary care' as used in these instructions is meant only such a degree of care as would be used by ordinarily prudent persons under the same or similar circumstances."

"3  (modified).   The court instructs the jury that if you find, from the evidence, that on or about the 13th day of October, 1907, in the nighttime, the plaintiff, while walking upon and along Brighton avenue, at its intersection with Saint John street, in Kansas City, Missouri, and while in the exercise of ordinary care on her part, fell into a ditch in said avenue and sustained injuries to her person from such fall, and if you further find that the defendant had dug or caused to

be dug said ditch and had left the same open and un-
guarded and had failed to give notice of the existence
and location of said ditch, by placing reasonably suffi-
cient danger signals upon and about said ditch, and
that by reason of defendant's failure to so guard said
ditch by such danger signals, if it did so fail, plaintiff
fell therein and was injured, then your verdict should
be in favor of the plaintiff, providing you find that
plaintiff was exercising ordinary care on her part for
her own safety."

Summarized, the evidence of plaintiff discloses
the following facts: 1st.  Plaintiff, when injured, was
traveling over a public street crossing. 2nd.  She knew
the street was being repaired, but did not know of the
existence of the hole into which she fell, nor did she
know that it was dangerous to use the crossing.  3d.
On account of the repairs and the unevenness of the
way, she was proceeding cautiously and was employing
her senses to guard against a mishap, but did not see
the hole because of insufficient light.  4th.  Defendant
had placed no warning sign at the crossing to apprise
pedestrians that the path was dangerous.

Counsel do not seriously combat the proposition
that this evidence accuses defendant of negligence.  In
a bad light, the hole was nothing short of a concealed
pitfall in a public street.  Defendant should have an-
ticipated that pedestrians might and in all likelihood
would use the crossing and, unless warned, would be
in serious danger of falling into the pitfall.  Signal
lights should have been placed there to warn the trav-
eler that danger lurked in his path and the absence of
such signals amounted to an assurance that though the
way might be rough and uneven, it was free from con-
cealed dangers.

With these observations, we pass to the subject of
contributory negligence.  Compacted, the principal ar-
gument of defendant is that since she knew that the
crossing lay over tracks which were being repaired,

plaintiff had knowledge of all facts of which notice would have been imparted by signal lights and, consequently, the negligence of defendant could not have been the cause of the injury and that the cause thereof was the negligence of plaintiff in choosing a dangerous way. Among the authorities cited in support of this proposition are: Wheat v. City, 179 Mo. l. c. 581; Ray v. City, 70 Mo. App. l. c. 258; Diamond v. City, 120 Mo. App. 185; Woodson v. Railway, 123 S. W. Rep. 820; Coffey v. City, 186 Mo. l. c. 585.

These cases would support the position of defendant here if the facts were conceded that plaintiff either had actual knowledge of the hole or could have discovered its presence had she been making reasonable use of her senses. With knowledge actual or implied of confronting conditions, she would not be heard to complain of the absence of a warning from defendant. But the evidence of plaintiff shows that she did not have actual knowledge of the presence of the hole; that she was using her senses to the best of her ability and that, owing to the darkness, she was unable to discover the danger. It was not negligence in law for her to use the crossing; it did not appear to be so glaringly dangerous that a reasonably prudent person in her situation would say that it could not be used in safety. She had a right to assume in the absence of warning to the contrary that the way, though rough, was reasonably safe. The rule thus is stated in Heberling v. Warrensburg, 204 Mo. 617:

"It is not to be understood that it is the duty of the citizen to inspect the sidewalks or streets for defects of which he has no knowledge, but he may act on the presumption the street is reasonably safe so long as he conducts himself as a reasonably prudent person would under like circumstances. If he knows of a defect and it is not so obviously dangerous that no prudent person would attempt to use the street, he may still use the street provided he exercises that care

which a reasonably prudent person would in like circumstances, but he is not bound, merely because he encounters a defect which a reasonably prudent man would think he could pass by the exercise of care, to avoid the street entirely."

We say that the classification of the conduct of plaintiff under all the facts and circumstances disclosed was an issue of fact for the jury to determine and, further, that the jury might well conclude that the absence of signal lights served to lure plaintiff into danger and, therefore, was the proximate and sole cause of her injury. The demurrer to the evidence was properly overruled.

We find no error in the instructions. Those we have quoted are manifestly in harmony with the views just expressed. The objection to the instruction on the measure of damages is not tenable for two reasons: First, there is no proof that a part of the injuries consisted of nervous shock caused by the fear of plaintiff that the approaching car would run over her on account of her inability to rise after she had fallen; and, second, had such fact been disclosed, she would be entitled to the recovery of such damages under the rule followed by us in Heiberger v. Telephone Co., 135 Mo. App. 452, where we held that where the reality of the cause is guaranteed by proof of a substantial battery, a recovery may be had for nervous shock whether such shock came through the battery or along with it.

The court did not commit error in refusing defendant's instructions lettered "A" and "B." The former was rightly designated by the court as a "stump speech" and the latter was without evidentiary support.

The cause was fairly tried and it follows that the judgment should be affirmed. It is so ordered. All concur.