Joan ISEMINGER and John
Iseminger, Appellants,

v.

Deborah Kay HOLDEN, Respondent.

No. 30095.

Missouri Court of Appeals,
Western District.

June 29, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 31, 1979.

Application to Transfer Denied
Sept. 11, 1979.

J. Kirk Rahm, Warrensburg, for appellants.

Edgar S. Carroll, Warrensburg, for respondent.

Before HIGGINS, Special Judge, Presiding, SWOFFORD, C. J., and WELBORN, Special Judge.

ROBERT R. WELBORN, Special Judge.

Automobile collision damage suit. On the first trial, verdict was for defendant. A motion for new trial was sustained. On appeal, the order was affirmed. *Iseminger v. Holden,* 544 S.W.2d 550 (Mo. banc 1976). Upon retrial, jury verdict against was for defendant. Plaintiffs appeal.

On June 15, 1972, at the intersection of Carpenter and Maguire Streets in Warrensburg, Missouri, Deborah Kay Holden accelerated a Chevrolet Vega station wagon backwards into the front of a Dodge automobile occupied by Joan Iseminger and her husband John. Holden estimated her speed at from five to seven miles per hour at the time of the collision. The damage to the Iseminger vehicle was limited to the grill and was estimated at $12.00. The only visible damage to the Holden auto was a dent in the rear bumper.

Asserting injuries to her neck and back, Joan Iseminger filed suit against Holden, claiming $50,000 damages. John joined in a claim for loss of consortium and sought $10,000 damages.

At trial of the action, defendant's medical witness testified that he could find no organic basis for plaintiff Joan's complaints. Plaintiffs' medical evidence was that Joan suffered permanent neck injury as a result of the collision and that a previously existing back condition was aggravated; that prior injuries to Joan's neck and back in 1964, 1969 and 1971 made her more vulnerable to subsequent injury; that a congenital abnormality, elongation of transverse process of 7th cervical vertebra, made her more susceptible to injury. As early as 1966, Joan was under medical recommendation to lose weight because of back problems. Following the June 15, 1972 incident, two orthopedic surgeons recommended that she lose weight because of the adverse effect of her weight on her back.

A social friend of Joan testified that since the collision Joan is easily upset, doesn't smile like she used to and complains a lot about her neck and back. John testified that, since the collision, Joan had been less able to engage in household, recreational and marital activities.

(The foregoing is a somewhat abridged version of the facts as stated in appellants' brief. It is sufficient in the light of the issues on this appeal.)

The plaintiffs' claims were submitted on failure to keep a careful lookout. The jury verdict was for defendant. Plaintiffs appeal. The assignments of error here are directed at rulings of the trial court on voir dire and closing arguments.

■ Appellants complain of the trial court's sustaining objections by respondent's attorney in jury voir dire by appellants' counsel, as follows:

"MR. KIRK RAHM: * * * Now, this is a case in which there will be evidence that Mrs. Iseminger was a little bit overweight. There is going to be some evidence she had some congenital defects in her cervical spine and that she had some prior injuries.

"MR. CARROLL: I am going to object to this line of voir dire.

"THE COURT: That objection is sustained as to the injuries. This is voir dire examination.

"MR. KIRK RAHM: What I want to cover and what I want to ask you is, do any of you feel as though you would have any difficulty or reservation about returning a verdict in the case for someone whose own personal problems as far as weight, as far as any congenital defects, might have made that person more vulnerable or more susceptible to injury?

"MR. CARROLL: Judge, he is arguing the case. It is improper voir dire. The question is whether or not they can follow the law.

"THE COURT: The objection is sustained."

The argument here, based upon *Littell v. Bi-State Transit Development Agency*, 423 S.W.2d 34 (Mo.App.1967), is that the trial court's ruling prevented necessary inquiry concerning possible bias of prospective jurors against a person whose obesity or injury from congenital defects made her vulnerable to injury from a minor impact auto collision.

Littell does admonish that on voir dire " * * * counsel should be allowed a wide latitude to expose * * * bias." 423 S.W.2d 36 [3]. That opinion also notes that voir-dire bias questions must " * * * not be used to disguise arguments or pleas for sympathy." 423 S.W.2d 38 [11].

" * * * [T]he examination of prospective jurors is supervised by the trial court, which in its discretion determines the nature and extent of counsel's inquiries. Only upon a demonstration of manifest abuse of discretion and probability of injury to the complaining party should we interfere. *Brown v. Bryan*, 419 S.W.2d 62 (Mo.1967); *M & A Electric Power Cooperative v. True*, 480 S.W.2d 310, 314 (Mo.App.1972)." *Schmidt v. Central Hardware Company*, 516 S.W.2d 556, 560 [11, 12] (Mo.App.1974).

The remarks and questions objected to here have an argumentative tone. The trial court apparently so considered them when he sustained the objection made on that basis. The demarcation line between permissible bona fide inquiry aimed at uncovering bias and impermissible argument purportedly in search of bias is not so clear and unmistakable as to permit this court to conclude that a manifest abuse of discretion has been demonstrated.

■ Appellant also complains of the trial court's sustaining defense counsel's objection to the following question on voir dire:

"Now, in this case there is going to be no claim of bad motive or bad intent and what I want to ask you is whether or not any of *you would* have any difficulty following the law that bases the responsibility on momentary carelessness without any bad intent or bad motive."

Appellant complains that the trial court's ruling precluded inquiry necessary to permit appellants to discover juror bias against this legal theory of recovery. Again, appellant relies upon the *Littell* case, supra, and also upon *Duensing v. Huscher*, 431 S.W.2d 169, 172 (Mo.1968). In the latter case, the court approved an inquiry as to whether the panel members could follow the law of punitive damages as given to them in the court's instructions. The court pointed out that the proper method of uncovering bias as to the law is to ask panel members whether, if the court instructs them in a specified manner, they have any "opinion or conscientious scruples such as would prevent them from returning a verdict accordingly." 431 S.W.2d 172 [1]. See also *Hill v. Boling*, 523 S.W.2d 867, 873–874 [14–17] (Mo.App.1975). In sustaining the objection in this case, the trial court stated that counsel might ask whether the panel members "will follow the instructions of the Court * * *." That direction is in accord with the directions of the *Duensing* and *Hill* cases. Clearly, no abuse of discretion appears.

■ Appellants complain of the trial court's ruling in sustaining objection to the statements of appellants' counsel on final argument. The first complaint arises in the following sequence:

"(Counsel for appellants) I would like to point out that the burden of proof in this case is different because it is a civil case than it would be in a criminal case.

"MR. CARROLL: Your Honor, I object to that. The Court's instructions outline the burden of proof.

"THE COURT: That will be sustained.

"MR. RAHM: I want to point out specifically that the Court's instructions say that the burden of proof is—it is a question of what you believe; it is not a question of us proving things beyond a reasonable doubt."

Here appellants argue that, in view of the policy of the law to permit a wide latitude in closing argument, citing *Lineberry v. Robinett*, 446 S.W.2d 481, 486 [7]

(Mo.App.1969), counsel should have been permitted the "simple declaratory statement" distinguishing between the burden of proof in civil and criminal cases. As appears from the foregoing excerpt from the transcript, counsel did proceed, despite the ruling, to distinguish between the burden of proof in such cases. Any error insofar as the ruling on the first remark was concerned would be completely harmless in view of the further remarks of counsel.

 The court sustained objection again in the following sequence:

Counsel pointed out that the case did not deal with an inanimate object where the cost of repair would provide the measure of damages "and unlike the machine, there is pride and there is dignity which have been affected by the injuries that have been sustained." Defense counsel's objection that "pride and dignity" are not a proper measure of damages was sustained.

Appellants here contend that the trial court's ruling improperly limited their right to compensation and created the impression that they were seeking compensation for a noncompensable loss.

Had the jury returned a verdict for appellants, the matter here urged might have had some significance if appellants felt that the amount of the verdict was inadequate. Where mental distress accompanies physical injury occasioned by another's negligence, such factor is for consideration in fixing the amount of the injured party's damages. *Shortridge v. Scarritt Estate Co.*, 145 Mo.App. 295, 130 S.W. 126 (1910). Absent physical injury or conduct of a type not here involved (*Gambill v. White*, 303 S.W.2d 41 (Mo.1957), recovery for mental distress is not permitted. Whether or not "pride and dignity" are components of mental distress need not be pursued. In returning a verdict for defendant, the jury did so for one or two reasons— defendant was not negligent or plaintiff Joan was not injured. In either event, the question of damages for mental distress would not have been reached, any error on the part of the trial court in the premises would not have affected the outcome and would not constitute reversible error.

In defense counsel's closing argument, he expressed the opinion that his client was not negligent. When appellants' counsel, in rebuttal, sought to comment upon the credibility and sincerity of the remarks of his opponent, the latter objected that he was " * * * not on trial here" and the objection was sustained.

Appellants here argue that the law allows "a liberal latitude in argument, especially where the argument is a fair retort to the preceding argument of opposing counsel." *Contestible v. Brookshire*, 355 S.W.2d 36, 44 [17, 18] (Mo.1962). Appellants candidly acknowledge that no case has been found in which the denial of the right to make such an argument resulted in a reversal. At best, this matter would be within the realm of discretion entrusted to the trial court (*Duensing v. Huscher*, supra). A ruling such as this limiting argument on a matter wholly unrelated to the merits of the case could hardly constitute an abuse of discretion.

Judgment affirmed.

All concur.